UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JODY CARR,<br><br>              Plaintiff,<br><br>vs.<br><br>C/O LYTLE and SGT. ANDERSON,<br><br>              Defendants. | Case No. 1:20-cv-00313-DCN<br><br>**SEALED<br>MEMORANDUM DECISION<br>AND ORDER** |

Pending before the Court are various motions filed by the parties, including a motion for partial summary dismissal of one of Plaintiff's two claims on grounds that it is barred by a prior settlement agreement between the parties. Dkt. 25. Having considered the record and the arguments of the parties, the Court concludes that Plaintiff's first claim is subject to dismissal and the second will proceed to summary judgment on a due process theory.

## BACKGROUND

Plaintiff Jody Carr is a prisoner in custody of the Idaho Department of Correction (IDOC). Plaintiff settled a first set of seven federal and state court actions against various state actors on April 26, 2019, in a judicial settlement conference. The Court takes judicial notice of the "global settlement agreement" (GSA) between Plaintiff, and the State, both represented by counsel, terminating the following: United States District Court District of Idaho Case Nos. 1:13-cv-00380-REB, 1:14-cv-00125-BLW, 1:15-cv-00133-CWD, 1:16-cv-00182-DCN, 1:17-cv-00167-DCN, and 1:18-00247-DCN, as well as Ada County

Fourth Judicial District Court Case No. CV01-19-5023. *See* Dkt. 15, sealed GSA in Case No. 1:18-cv-000247-DCN. Hereinafter, each case will be referred to by its last few digits.

The GSA resolved all Plaintiff's claims against the State of Idaho Department of Correction, the State of Idaho, their "employees," and "all other persons or entities acting for, by or through them." *Id.*, p. 1. In the GSA Plaintiff gave up "any and all rights, actions, causes of action, claims, concerns, grievances, demands, damages of any nature, and attorney fees and costs which the undersigned now has or which may hereafter accrue on account of, or in any way grow out of, any known and unknown, foreseen and unforeseen injuries, damages, economic loss, loss of income, earnings or profit, medical expenses and any other injuries, damages and expenses of any kind or character, or which may arise as a result of or relate to the incidents which form the subject matter of any and all allegations raised in any and all disputes between Releasor and any or all of the Releasees named in any or all of the actions identified herein, including, without limitation the allegations raised or the subject matter of any and all Complaints or Petitions for Writ of Habeas Corpus which have been filed as of the date of signature herein." *Id.*, pp. 1-2.

In the GSA, Plaintiff also released all "past, present and future claims arising in any way out of the dismissed lawsuits and Habeas Corpus Petition referenced herein," and the parties agreed that "no future actions(s) may be maintained which are based upon or include in any fashion the alleged wrongful acts from the dismissed actions, nor may those alleged wrongful acts be used as the basis for background evidence in any future lawsuits or actions." *Id.*, p. 2. Plaintiff received a sum of money for release of all his claims. *Id.*, pp. 2-3.

SEALED MEMORANDUM DECISION AND ORDER - 2

**DISCUSSION**

The instant case is part of a second set of Plaintiff's cases arising from Case No. 1:20-cv-00146-DCN, *Carr v. Cupp* (Case 146), which contained a multitude of unrelated claims against a multitude of defendants, in violation of Federal Rule of Civil Procedure 20. The Court severed Plaintiff's claims into a number of separate actions and required Plaintiff to file a second amended complaint in each if he desired to pursue his claims; the Court provided Plaintiff with the appropriate standards of law, including those governing segregation and due process claims. *See* Case 146, Dkt. 13; *see* Dkt. 2 in this action.

In this severed action, Plaintiff has submitted a Second Amended Complaint with exhibits. Dkt. 3. In accordance with the Initial Review Order, Plaintiff was permitted to bring only the following claims in this action:

1. Defendants Lytle and Anderson violated Plaintiff's due process rights by transferring him to a close custody unit, D-1 on April 8, 2019, without adequate due process;

2. Defendants Lytle and Anderson transferred Plaintiff to "The Hole" (disciplinary segregation) on June 12, 2019, without adequate due process.

*Id*., p. 4.

Rather than follow the Court's Order to bring these claims only in this action, Plaintiff also attempted to pursue these same or similar claims in an amended pleading in Case 146. The Court now reviews the claims Petitioner was authorized to raise in his amended pleading.

1. **Claim 1: April 8, 2019 – All Legal Theories**

Plaintiff alleges in the amended pleadings that, on April 8, 2019, IDOC employees Lytle and Anderson transferred him to close custody with no override, in retaliation for making PREA complaints. Dkt. 3. Lytle is directly named in suits settled by the GSA. Anderson is an employee of IDOC. The PREA complaints are based on alleged sexual assaults that occurred before the GSA. The date of Lytle and Anderson's alleged acts occurred before the GSA. These claims are barred by the GSA and accordingly fail to state a claim upon which relief can be granted.

2. **Claim 2: June 11, 2019 - Conspiracy**

Plaintiff asserts that, on June 11, 2019, inmate Wolfe stole four affidavits of other inmates that Plaintiff kept in his legal files. The affidavits were intended to support a class action lawsuit centered on the dangerousness of double-celling inmates in close and protective custody. Plaintiff asserts that Wolfe gave the affidavits to prison officials, who conspired with Wolfe to stop the lawsuit from being filed. In a screening order in Case 146, the Court has addressed this claim as one that fails to state a claim.

3. **Claim 3: June 11, 2019 – Due Process**

Plaintiff also alleges that, on June 11, 2019, Defendants failed to afford him adequate due process when he was placed in segregation pending investigation for 36 days. The segregation allegedly resulted from IDOC officials' need to investigate Wolfe's statement to prison officials that Plaintiff was trying to entice inmate LaGrotta to assault Plaintiff so Plaintiff could sue IDOC officials again.

Plaintiff may proceed to the next stage of litigation—summary judgment—on the claim that had a liberty interest in not being placed in segregation pending investigation for 36 days, and that he was not afforded proper due process when he was placed there.[1] This claim is not the subject of the pending Motion for Partial Summary Dismissal.

Though the body of the amended complaint mentions dates beyond June 12, 2019, the prayer for relief makes it clear that the only claims asserted in this action arise from April 8, 2019, and June 11/12, 2019. Plaintiff is pursuing claims arising after the 36-day period in other pending lawsuits, and, thus, he cannot also do so here.

### 4. Public Disclosure of Confidential Settlement Agreement

Because the GSA contains a confidentiality clause (*see* Dkt. 15, pp 4-5, in Case 247), the parties and the Court have filed the GSA and documents quoting from it under seal. Defendants point out that recently Plaintiff filed the GSA in its entirety as an exhibit at Docket 30, pp. 12-19, without requesting that it be filed under seal. The effect is that Plaintiff has published to all the world the terms upon which the State is willing to settle with a prisoner, including the amount that the State was willing to pay. Because Plaintiff has breached the confidentiality clause, Defendants who are parties to the GSA are entitled

---

[1] In the GSA, Plaintiff gave up his own claims regarding dangerous conditions in the double-celled close custody/protective custody units (which is the basis for the alleged class action lawsuit). At the time Wolfe allegedly stole the affidavits for the class action lawsuit, Plaintiff had no right to continue to pursue his released claims; in fact, continuing to pursue them violated the GSA. Therefore, he can state no personal damage that resulted from any such conspiracy between Wolfe and prison officials to stop the class action lawsuit. Neither can Plaintiff assert the rights or damages of other inmates who desired to filed similar claims but were affected by the alleged actions of Wolfe and IDOC officials. It does not appear that Plaintiff is attempting to proceed on these theories in this action, but to the extent that he attempts to do so, these facts fail to state a claim upon which relief can be granted under a conspiracy theory, as explained in Case 146.

to file a motion in this action for imposition of sanctions for breach of contract, separate from, and in addition to, Plaintiff's other breach of contract by bringing claims contrary to the agreement.

In *Baella-Silva v. Hulsey*, 454 F.3d 5 (1st Cir. 2006), a similar case, the United States Court of Appeals for the First Circuit reasoned:

> We see no clear error in the district court's determination that Baella–Silva violated the confidentiality clause of the agreement. Baella–Silva and his attorney actively participated in negotiating and drafting the agreement, its terms were clear, the settlement was incorporated into the district court's judgment, and that judgment was never appealed. Filing a document on the district court's electronic filing system is not consistent with keeping information confidential.

*Id*. at 11. In *Baella-Silva*, the plaintiff and defendant were successive attorneys for a client in a lawsuit, where the dispute was over the percentage of attorney fees due each attorney after the case was decided in the client's favor. After the attorneys decided that issue in a settlement agreement ending a first case, one of the attorneys filed a second and third lawsuit claiming breach of the agreement.

In that case, the parties had predetermined that the proper sanction for a breach of the confidentiality clause would be $50,000 in liquidated damages. That sum was upheld on appeal. The court also upheld a $20,320 sanction against Baella-Silva for his filing of two new lawsuits that contravened the settlement agreement between him and the other party to the agreement. "A trial court has wide discretion in its choice of sanctions," the First Circuit court observed. *Id*. at 13.

That court concluded that "the amount of the sanction, which is equal to the amount

SEALED MEMORANDUM DECISION AND ORDER - 6

that Baella–Silva sought in the Commonwealth court in violation of the settlement judgment, [was] not excessive." *Id*. The court observed that the "sanction [was] reasonably proportionate to the offending conduct." *Id*. In addition, because "setting the amount of an effective sanction may include punitive concerns as well as considerations of deterrence" for the reason that one of the goals of a sanction "stem[s], in part, from a need to regulate conduct during litigation," the appellate court refused to disturb the sanction amount imposed in the trial court's discretion. *Id.* at 13.

The parties are invited to brief the sanctions issues in this case, explaining how legal principles governing sanctions apply under the particular facts of this case. The Court will leave it to the parties' discretion whether to brief that issue now or after the case is completed, whether on summary judgment or after trial.

## ORDER

**IT IS ORDERED:**

1.  Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. 25) is GRANTED.

2.  Plaintiff may proceed to the next stage of litigation on his due process claims based on his placement in segregation pending investigation from approximately June 11, 2019, to approximately July 17, 2019. No other theories or claims will be entertained in this action.

3.  Motions for summary judgment on the remaining due process claim must be filed no later than September 30, 2022, with responses due 30 days after the filing of the motion.

SEALED MEMORANDUM DECISION AND ORDER - 7

4.  Disclosures related to only the remaining claim are due within 30 days after entry of this Order, superseding any prior deadlines.

5.  Discovery on only the remaining claim shall be completed no later than August 15, 2022, superseding any prior deadlines.

6.  Plaintiff's Motion to Compel Discovery and Disclosures (Dkt. 37) is DENIED.

7.  Plaintiff's Motion Requesting This Court Impose Sanctions (Dkt. 38) is DENIED.

8.  Plaintiff's Application for Leave to Proceed in Forma Pauperis (Dkt. 42) is GRANTED. Plaintiff has paid the filing fee, but it appears that he cannot otherwise pay other costs that may be associated with this case.

9.  Plaintiff's Motion to Have More Than (3) Three Motions Before the Court Pending at (1) One Time (Dkt. 43) is DENIED.

10. Plaintiff's Motion Requesting this Court Reconsider and Review 20 Plaintiff's Motion for Subpoenas and Subpoenas Duces Tecum (Dkt. 44) is DENIED.

11. Plaintiff's Motion to Proceed Directly to Trial (Dkt 45) is DENIED.

12. Defendants Motion to Stay Deadlines (Dkt. 56) is GRANTED.

13. Plaintiff must not contravene the terms of the GSA in disclosures; in disclosure requests; in discovery responses or requests; in notices, motions, responses, replies, and exhibits; or in any other document whatsoever in this action. Plaintiff shall follow the filing and redaction instructions in Case 146 in this and all other pending cases. Further breaches of the GSA and court orders may result in further sanctions, including dismissal of this entire case with prejudice, without further notice.

14. Plaintiff will be sanctioned for including content that is prohibited by the GSA in his second amended complaint in this action. The court will entertain a motion, response, and reply from the parties as to the appropriate sanctions.

15. Plaintiff will also be sanctioned for filing the GSA as part of a public record in this case. Damages continue to accrue because Plaintiff has made no effort to remedy the filing by removing it from public view. The court will entertain a motion, response, and reply from the parties as to the appropriate sanctions.

DATED: May 9, 2022

David C. Nye
Chief U.S. District Court Judge