UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JODY CARR,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>C/O LYTLE and SGT. ANDERSON,<br><br>　　　　　　Defendants. | Case No. 1:20-cv-00313-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

The remaining claim in this prisoner civil rights case filed by Plaintiff Jody Carr is whether Idaho Department of Correction (IDOC) Officer Lytle and Sergeant Anderson held Plaintiff in "Segregation Pending Investigation" without adequate Fourteenth Amendment due process protections from June 11, 2019, to July 17, 2019. *See* Dkt. 2, pp. 14-15. Now pending before the Court is Defendants' Motion for Summary Judgment. Dkt. 63. The motion is fully briefed and ripe for adjudication, and oral argument is unnecessary. *See* Dkts. 66, 67, 68. Having reviewed the record in this matter, the Court enters the following Order granting the Motion for Summary Judgment.

### SUMMARY JUDGMENT STANDARD OF LAW

Summary judgment may be granted when a party shows that, as to a claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts

will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

To show that the material facts are not in dispute, a party may cite to particular materials in the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Pro se inmates are exempted "from *strict* compliance with the summary judgment rules," but not "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). At summary judgment, courts "do not focus on the admissibility of the evidence's form," but "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

## REVIEW OF MOTION FOR SUMMARY JUDGMENT

1. **Relevant Facts**

On June 12, 2019, Plaintiff was transferred from Close Custody/Protective Custody to Segregation Pending Investigation ("SPI"), a short-term form of restrictive housing. Plaintiff states: "I had no idea why." Dkt. 66, p. 4. He believed he could be kept there for

no more than 15 days," based on the IDOC's published procedures. *Id. See* Plaintiff's Exhibit A-004, IDOC procedures (stating that "any combination of short-term restrictive housing or disciplinary detention cannot exceed 15 days on a single event. The 15-day limit cannot be extended.") Dkt. 3-2, p. 5.

While in segregation, Plaintiff lost use of his personal property, recreational and entertainment items, and personal clothing. He was given only the following: an orange jumpsuit, a pink t-shirt, a pair of pink underwear, a pair of pink socks, and shower shoes. He was not able to use the telephone, electronic service kiosk, microwave oven, or dayroom. He was placed in a cell with a light that stayed on 24 hours. He was permitted a 10-minute shower every other day. He was searched and handcuffed every time he left the cell. *See* Dkt. 3, pp. 7-8, Verified Prisoner Complaint.

On July 16, 2019, the 35th day Plaintiff was in SPI, he received a Restrictive Housing Referral Notice, informing him that he would have a hearing within the next 7 days to determine whether he should be placed in long-term administrative segregation. Dkt. 63-2, p. 5, Waldram Decl., Ex. A. The reason given was: "To preserve the integrity of a criminal/administrative investigation." *See id*.

Plaintiff waived his right to 48 hours' preparation time for the Restrictive Housing hearing. *Id.* The hearing was held on July 17, 2019, Plaintiff's 36th day in SPI. Dkt. 63-2, p. 6, Ex. B. Plaintiff was present at this hearing and allowed to ask questions and present argument about why he should not be placed in administrative segregation. *See id*.

At the hearing, prison officials generally made Plaintiff aware of the reasons for placement in administrative segregation—"Carr has claimed that he is not safe in protective

custody. Additionally, the integrity of an ongoing investigation into Carr's reports needs to be preserved." *Id*. Prison officials did not specifically mention the topics of their investigation: Plaintiff's PREA complaint, an allegedly false statement made by Plaintiff, or his alleged soliciting an inmate to assault him. Dkt. 66, p. 22.

After the hearing, the Restrictive Housing Committee recommended that Plaintiff be placed in long-term administrative segregation, and he was transferred. *Id*.

2. **Whether Plaintiff Has Shown a Liberty Interest**

   A. *Standard of Law*

The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving an individual of a liberty or property interest without following the proper procedures for doing so. *See Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974). To succeed on a procedural due process claim, a prison inmate must establish (1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest by use of insufficient process. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (citation and punctuation omitted). The Due Process Clause does not create a liberty interest in remaining in the general population or being free from different types of segregation. *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (citing *Sandin*, 515 U.S. at 485-86). Prison officials may assign any housing or enforce any sanctions that are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin*, 515 U.S. at 478 (citing *Meachum v. Fano*, 427 U.S. 215, 225

(1976)). However, states may create a liberty interest by choosing to impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

In the past, many inmate behavioral incidents resulted in "disciplinary segregation," but in the modern era, that trend has declined. Instead, inmate behavior often triggers prison officials' duty to separate an inmate from others for purposes of institutional safety and order—which is an *administrative*, not a punitive, decision that results in "administrative segregation." For example, prisoners may be segregated to protect them from other prisoners; to protect other prisoners from the segregated prisoner; or pending investigation of disciplinary charges, transfer, or re-classification. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *overruled on other grounds by Sandin*, 515 U.S. at 472–73. An example of a legitimate administrative ground for placement and retention in segregated housing is gang validation, which is not considered a punitive decision. *See Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003). "It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt*, 459 U.S. at 468.

To determine whether *any* type of segregation poses an atypical and significant hardship, courts must conduct a "case by case, fact by fact" analysis of the "condition or combination of conditions or factors" that the plaintiff experienced. *Serrano*, 345 F.3d at 1078 (citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)). A modern articulation of the *Sandin-Serrano* test for a liberty interest calls for a review of:

>   (1) the extent of difference between segregation and general population; (2) the duration and intensity of the conditions [of] confinement; and (3) whether the sanction [invariably] extends the length of the prisoner's sentence.

*Cepero v. High Desert State Prison*, No. 3:12-cv-00263-MMD-VPC, 2015 WL 1308690 at *14 (D. Nev. Mar. 24, 2015) (parenthetical added from *Serrano*); *see Sandin*, 515 U.S. at 486–87; *Serrano*, 345 F.3d at 1078.

In accord with *Sandin* and *Serrano*, the United States Supreme Court in *Wilkinson v. Austin* explained the different factors that must converge to create a liberty interest when an inmate is housed under very restrictive conditions (termed "OSP"):

>   For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30–day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30–day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. *Austin I*, 189 F.Supp.2d, at 728. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP. *Sandin*, *supra*, at 483, 115 S.Ct. 2293.

545 U.S. 209, 223-24 (2005).

### B. *Discussion of Liberty Interest in Not Being Confined in SPI Housing*

Because there is no constitutional liberty interest in being free from segregation in prison, Plaintiff must show he suffered an atypical and significant hardship that implicates

MEMORANDUM DECISION AND ORDER - 6

a state-created liberty interest. The Court now applies the *Sandin*/*Serrano* factors to determine whether Plaintiff's conditions of confinement were an atypical and significant hardship in relation to the ordinary incidents of prison life.

First, the undisputed facts show a moderate difference between this form of segregation and general population—in segregation the prisoner has almost nothing to do and no opportunity to socialize with other inmates or interact with family members. However, the Constitution does not protect against boredom; rather, for a time frame like Plaintiff's, its focus is on the adequacy of food, shelter, and opportunities for hygiene. "Eighth Amendment standards are offended by prolonged or indefinite confinement only when basic nutrition, sanitation, and health standards are ignored or when the segregated confinement bears no reasonable relation to the purpose for which a prisoner is committed." *Bukhari v. Hutto*, 487 F. Supp. 1162, 1169 (E.D. Va. 1980) (rejecting a claim that "oppressive boredom" violated the Constitution). *See also Griffin v. Coughlin*, 743 F. Supp. 1006, 1017 (N.D.N.Y. 1990) ("The court concludes that the complaints of boredom, frustration and hostility arising out of the idleness of PC inmates do not amount to eighth amendment violations.").

In *Gray v. Hernandez*, 651 F. Supp. 2d 1167 (S.D. Cal. 2009), the Court explained the divergence necessary to constitute an atypical and significant hardship:

> A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. [*Sandin*, 515 U.S.] at 485, 115 S.Ct. 2293; *see also Keenan v. Hall*, 83 F.3d 1083, 1088–89 (9th Cir.1996). Plaintiff asserts his Ad Seg placement forced him to endure: (1) 24 hour lock-down; (2) lack of medical treatment; (3) only one shower every three days; (4) poisonous food; and

MEMORANDUM DECISION AND ORDER - 7

> (5) lack of exercise. (Pl. Obj. at 13.) In his objections, Plaintiff contends these conditions meet the "dramatic departure" standard. However, that Ad Seg conditions do not mimic those afforded the general population does not trigger due process concerns. In fact, "[t]he transfer to less amenable quarters for nonpunitive reasons is ordinarily contemplated by a prison sentence." *Sandin*, 515 U.S. at 479, 115 S.Ct. 2293.

*Id*. at 1177.[1]

Second, the record shows that the "intensity" of the conditions are moderate for the same reasons. *Sandin*, 515 U.S. at 486–87 (noting that "Conner's confinement did not exceed similar, but totally discretionary, confinement in … degree of restriction"); *Cf. Serrano*, 345 F.3d at 1079 (concluding that it was "Serrano's disability—coupled with administrative segregation in an SHU that was not designed for disabled persons—[that gave] rise to a protected liberty interest.")

Beyond the "intensity" of the conditions, another part of the second *Sandin/Serrano* factor is duration of the confinement. Here, the duration was low to moderate, given that—although not a constitutional standard[2]—15 days seems to be recognized generally as a reasonable time frame by the IDOC. *See Richardson v. Runnels*, 594 F.3d 666, 672 (9th

---

[1] The court did not address but obviously rejected the plaintiff's allegation that the food in the segregation unit was poisoned; perhaps the plaintiff's continued existence was evidence enough to reject that contention.

[2] So long as prison policies satisfy minimum constitutional requirements, the civil rights statute does not require a prison to comply with its "own, more generous procedures." *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), *abrogated on other grounds by Sandin*, 515 U.S. 472. In *Sandin*, the United States Supreme Court rejected its prior test traditionally used to determine whether a prison regulation creates a liberty interest—whether the relevant regulation contains language that is mandatory or discretionary. 515 U.S. at 479-84. "[W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause." *Id*. at 483.

Cir. 2010) (finding that 15 days of administrative segregation was not an atypical and significant hardship in relation to the ordinary incidents of prison life). In *Sandin*, the United States Supreme Court held that, under the facts of that case, 30 days of administrative segregation did not support an atypical and significant hardship finding. *See* 515 U.S. at 486.

The third *Sandin/Serrano* factor is that Plaintiff's reassignment to SPI did *not* extend the length of his sentence, make him immediately ineligible for parole, or cause the loss of good-time credits (not available in Idaho).

Considering this combination of factors, the Court finds that Plaintiff's conditions of confinement were a moderate hardship, but they did not affect Plaintiff's sentence. Therefore, he has not shown he had a liberty interest in not being confined in temporary segregation pending investigation for 36 days under these conditions.

Before coming to these conclusions, the Court searched the record for relevant facts. The Court found that Plaintiff's exhibits do not address the time period at issue except for the exhibit at Dkt. 66-4, p. 11, which is the Restrictive Housing Hearing and Investigation Summary of July 17, 2019, also provided by Defendants (Dkt. 63-2, p. 7).

The Court cannot consider argument or asserted facts from the past time frame covered by Plaintiff's prior Global Settlement Agreement with the IDOC (as extensively explained in the Order at Dockets 9, 59).

Neither will the Court consider evidence from future time frames. For example, an April 1, 2020, email from a prison official indicating satisfaction with an outcome that was favorable to prison officials and adverse to plaintiff does not show that the placement in

MEMORANDUM DECISION AND ORDER - 9

segregation in June 2019 was the result of a conspiracy among prison officials. *See* Dkt. 66, pp. 2-3. In addition, Plaintiff asserts that he was isolated from contact with other inmates for a time period beginning on August 27, 2019, which is beyond the scope of this lawsuit. *See* Plaintiff's Statement of Disputed Facts, Dkt. 66, p. 22. Plaintiff is pursuing civil rights claims after July 17, 2019, in a different lawsuit.

For all of these reasons, the Court concludes that no process was due Plaintiff for his 36-day placement in segregation pending investigation. Defendants are entitled to summary judgment.

3. **Whether Plaintiff was Afforded Adequate Process**

Alternatively, the Court assumes for the sake of argument that process was due Plaintiff, and concludes that the due process protections provided him were reasonable under the circumstances.

　　A. *Standard of Law*

Within a reasonable time from *initial placement* in administrative segregation, a prisoner is entitled to the following process:

> [A]n informal, nonadversary evidentiary review is sufficient both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily, a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the

> decisionmaker reviews the charges and then available evidence against the prisoner, the Due Process Clause is satisfied. 459 U.S. at 476, 103 S.Ct. at 874.

*Toussaint v. McCarthy*, 801 F.2d 1080, 1099 (9th Cir. 1986) (relying on *Hewitt*; *abrogated in part on other grounds by Sandin*, 515 U.S. at 482-83).[3]

Here, Plaintiff was not provided formal notice of why he was in segregation until 35 days after his placement there. However, the Ninth Circuit Court has found a time period of 25 days for first notice to be "reasonable" in a due process analysis for the initial placement in segregation. *McFarland v. Cassady*, 779 F.2d 1426, 1428 (9th Cir. 1986) (inmate segregated on September 9, formal notice given on October 4, and hearing held on October 14), *abrogated in part on other grounds by Sandin*, 515 U.S. at 482-83. The United States Supreme Court acknowledged with approval the fact that "Ohio further reduces the risk of erroneous placement by providing for a placement review within 30 days of an inmate's initial assignment to OSP." *Wilkinson*, 545 U.S. at 227. Based on these cases, the Court concludes that Plaintiff's notice, given 35 days after placement in segregation, was reasonable.

---

[3] Initial placement in SPI does *not* trigger the *Wolff* procedural protections:

> (1) written notice of the charges before the disciplinary hearing (whether officials disclose the identity of confidential informants is left to the sound discretion) (2) at least 24 hours to allow the prisoner to prepare for the hearing; (3) the right to call witnesses and present documentary evidence, unless doing so would be unduly hazardous to institutional safety or correctional goals; (4) assistance from another prisoner or staff person where the issues presented are complex or the prisoner is illiterate; and (5) a written statement by the factfinders detailing the evidence relied upon and the reasons for the disciplinary action.

*Toussaint*, 801 F.2d at 1100–01 (citations omitted); *Wolff*, 418 U.S. at 567–68.

MEMORANDUM DECISION AND ORDER - 11

Plaintiff was not provided with details of the investigation or the identity of informants to permit him to fully respond, but was given only general information that an investigation was taking place. It is obvious that providing details to the suspected inmate in the midst of an investigation might compromise its integrity, because then the inmate could attempt to interfere with the investigation. Thus, for initial placement notice, the information Plaintiff was given was sufficient.

The United States Supreme Court has held that due process for all types of *disciplinary* segregation demands only that the prison hearing officer's decision be supported by "some evidence," and that the evidence "have some indicia of reliability"—a test now known as the "*Hill* standard," formulated in *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). *See Toussaint*, 801 F.2d at 1105 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*. The "some evidence" standard is minimally stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached." *Hill*, 472 U.S. at 455-56.

The Ninth Circuit has held that "the initial confinement of a prisoner to *administrative* segregation need not meet the *Hill* standard," because "the prison atmosphere is highly charged, and prison officials must be able to act swiftly on the basis of little information to avert dangerous situations." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (internal citations omitted) (emphasis added). The "some evidence" standard must be met only at the time of the post-placement hearing, *id.*, which is not at issue here.

B. *Discussion of Procedures Afforded to Plaintiff*

Because 36 days is within the bounds of reasonableness, the Court concludes that

Plaintiff received an initial hearing within a reasonable time. In fact, only a written review process with notice and response was required, according to the case law set forth above, and, therefore, he received more process than was due. Plaintiff received sufficient written notice of the reasons he had been placed in SPI: he was being considered for administrative segregation because of ongoing investigations and because he had stated that he did not feel safe in protective custody. He was given but waived 48 hours of preparation time. He was afforded an opportunity to present his views on a potential placement in administrative segregation in person, allowed to argue that he was not a good candidate for administrative segregation, and permitted to ask questions about how to avoid placement in administrative segregation. He, in fact, expressed his opinion that his placement was an act of retaliation due to his ongoing litigation.

   4. **Conclusion**

Here, there are no genuine disputes of material facts preventing the Court from finding and concluding that Defendants are entitled to summary judgment on Plaintiff's remaining claim. Plaintiff's 36 days in SPI were not an atypical or significant hardship, because he had adequate food, shelter, safety, and showers; the conditions were moderately harsh; and segregation of that type is to be expected for imprisoned convicted felons. Plaintiff was not due any process.

Alternatively, Plaintiff was provided with all of the process due him for an initial placement in SPI. It was not necessary for prison officials to rely on anything more than a "rumor"; nor did they have to compromise their investigation by providing him with more than the general information that they were conducting an investigation. Because

MEMORANDUM DECISION AND ORDER - 13

Defendants are entitled to summary judgment on these alternative bases, the Court does not reach the qualify immunity defense.

## ORDER

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 63) is GRANTED. A judgment dismissing this case with prejudice will be entered, and this case will be closed.

DATED: March 7, 2024

David C. Nye
Chief U.S. District Court Judge